UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PROFESSIONAL ASSET STRATEGIES and NORMAN M. BERK, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action Number **2:09-cv-1238-AKK** |
| v. | ) ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Defendant Continental Casualty Company's ("Defendant") Motion for Summary Judgment, (doc. 15), and Plaintiffs Professional Asset Strategies's ("PAS") and Norman M. Berk's ("Berk") (collectively, "Plaintiffs") Motion for Partial Summary Judgment, (doc. 16), are fully briefed and ripe for adjudication. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and this action is DISMISSED with prejudice.

### I. PROCEDURAL HISTORY

Plaintiffs filed this action on May 19, 2009, seeking a declaratory judgment that Defendant is obligated to provide coverage for a claim arising from the

wrongful conduct of one of their former employees and damages for breach of contract and bad faith.  Doc. 1 at 10-14.  Defendant removed this action from Jefferson County Circuit Court on June 16, 2009.  Doc. 1.  Thereafter, Plaintiffs and Defendant filed simultaneous motions for summary judgment. Docs. 15-18.

## II.  FACTUAL BACKGROUND

Based on the Joint Stipulation of Facts, (doc. 10), the relevant facts are as follows:

PAS and its sole owner, Berk, provide fee-only investment advice to their clients.  Doc. 10 ¶¶ 1, 2.  PAS does not take custody or possession of its clients' funds.  *Id.* ¶ 9.  Rather, the funds and assets are held by custodian Charles Schwab ("Schwab") in accounts in the clients' names.  *Id.*  PAS is only authorized to make trades in the accounts and to withdraw money to pay its service fees – it may not withdraw client funds for any other purpose.  *Id.* ¶ 9.

PAS purchased professional liability coverage from Defendant in April 2002 and has renewed its policy (the "policy") each year.  *Id.* ¶ 4.  This lawsuit arises from a claim PAS made on its 2008 policy, which became effective on April 1, 2008.  *Id.* ¶ 5; doc. 19-3.  The claim stems from the theft of client funds by Andrew Petrofsky ("Petrofsky"), a former PAS employee, (doc. 10 ¶ 5), who is now in federal prison.

PAS hired Petrofsky in October 2003. *Id.* ¶ 6. Soon thereafter, at Petrofsky's urging, his grandparents, Howard and Merle Schultz, moved their investment accounts to Charles Schwab for PAS's management. *Id.* ¶ 7. Petrofsky's mother-in-law, Sarah Schindler, also became a PAS client. *Id.* ¶ 12.

In early 2005, Petrofsky began stealing money from the Schultzes' accounts and continued doing so into 2008. *Id.* ¶ 11. He carried out his theft, in part, by writing checks on their accounts (on checks issued by Schwab directly to the Schultzes) and forging his grandparents' signatures. *Id.* ¶ 11; doc. 21 at 5. He also carried out and concealed his conduct by using his position at PAS to gain access to Schwab's software, where he modified the Schultzes' account data to escape detection. Doc. 10 ¶ 11. During this period, Petrofsky also stole money from his mother-in-law's account. *Id.* ¶ 12.

Berk discharged Petrofsky when he discovered the theft in August 2008. *Id.* ¶ 13. Prior to Berk's discovery, no one at PAS had knowledge of Petrofsky's actions. *Id.* ¶ 14.

On August 18, 2008, Berk reported Petrofsky's theft to Defendant as a potential claim. *Id.* ¶ 17. In December 2008, Mr. Schultz, individually and as executor of his late wife's estate, filed an arbitration complaint with the Financial

Industry Regulatory Authority against PAS, Schwab, and Berk.[1]  *Id.* ¶ 15. Additionally, Schwab restored the money stolen from Schindler's account and now seeks reimbursement from PAS in a separate action.  *Id.* ¶ 16.  Defendant maintains that PAS's claim is not covered under the policy, since it preexisted the policy effective date.

### III.   APPLICABLE STANDARD

The interpretation of an insurance contract presents a question of law appropriate for the court's resolution at the summary judgment stage.  *Caribbean I Owners' Ass'n, Inc. v. Great. Am. Ins. Co. of N.Y.*, 600 F. Supp. 2d 1228, 1244 (S.D. Ala. 2009); *B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 879 (Ala. Civ. App. 2001).  Under Alabama law, the insured bears the burden of proving that coverage exists.  *Caribbean I*, 600 F. Supp. 2d at 1244.  Ambiguities in the policy language are resolved in the insured's favor.  *Id.*  However, "ambiguities cannot be constructed from thin air by strained or twisted reasoning in interpreting the language," and "courts construe the words according to the interpretation ordinary men would place on the language" of the policy, giving

---

[1] Schultz moved to intervene in this case.  Docs. 29, 32.  However, in light of this opinion, Schultz's motion is moot.

words the same "meaning that persons with a usual and ordinary understanding" would use. *Id.* (citations and quotations omitted).

## IV.  ANALYSIS

This dispute centers primarily on the parties' interpretation of the term "you," which the policy defines, in part, as any employee performing "professional services."  No coverage exists under the policy if any "you" had knowledge of a claim prior to the effective date of the policy.  Defendant contends that such is the case here because Petrofsky is a "you."  Plaintiffs counter that Petrofsky is not a "you," because his theft was not part of his rendering "professional services" on their behalf and that they are due coverage as a result.  Alternatively, Plaintiffs assert that even if Petrofsky is a "you," they are still due coverage because of the "innocent insured" provision.  Because this matter calls for the court to interpret the meaning of the terms of a policy, it is appropriate for summary judgment disposition.

    **A.**    **Plaintiffs' claim is not covered because Petrofsky is a "you" who had prior knowledge of his conduct and knew that his fraud might result in a claim on the policy.**

As a threshold matter, under the policy, a "claim" is "a demand received by **you** for money or services naming **you** and alleging an act or omission, including **personal injury** or **advertising injury**, in the rendering of **professional**

**services**." Doc. 19-3 at 31 (emphasis in original). Defendant agreed to pay on all claims "first made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom you are legally liable provided that . . . prior to the effective date of this Policy, none of **you** had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**." *Id.* at 34 (emphasis in original).

To resolve this dispute, the court must determine initially who qualifies as a "you" under the policy – and that resolution is contingent, in part, on what constitutes "professional services." Even if the court finds that Petrofsky is a "you," the court must determine next whether "prior to the effective date of this Policy, [Petrofsky] had [no] basis to believe that any . . . act or omission . . . might reasonably be expected to be the basis of a claim." *Id.* To no surprise, the parties take opposing views on these issues. Defendant contends that coverage is precluded because Petrofsky fits the policy's definition of "you," was conducting "professional services" in the commission of his wrongful acts, and knew or should have known at the time of the policy's effective date that his actions might reasonably result in a claim on the policy. Plaintiffs counter that Defendant has failed to demonstrate that Petrofsky knew that his wrongful acts might result in a

claim on the policy and that he is not a "you" because he was not conducting "professional services" when he stole the funds in question.

       *1.*     *Petrofsky is a "you," as defined by the policy.*

The policy defines "you" as the "Named Insured" (PAS) and "any person who is or becomes a partner, officer, director, associate, or employee of the **Named Insured** but only for **professional services** performed on behalf of the **Named Insured**." Doc. 19-3 at 33 (emphasis in original). The parties agree that Petrofsky was an employee of PAS at the time of his wrongful acts. Doc. 10 ¶¶ 6, 13. Moreover, the parties agree also that in the course of his employment, Petrofsky performed "professional services," (*see* doc. 18 at 4), which is defined as services "performed in the practice of public accountancy by **you** for others for remuneration that inures to the benefit of the **Named Insured**, including but not limited to consulting services and **investment advisory services**," (doc. 19-3 at 33 (emphasis in original)). However, they disagree on whether he was performing "professional services" when he engaged in the conduct at issue here.

To Plaintiffs, "professional services" are synonymous with legal or authorized conduct. Specifically, Plaintiffs argue that Petrofsky's theft cannot constitute "professional services" because "stealing blank checks from a family member's home and using them for one's own benefit" does not fit the policy's

definition.  Doc. 21 at 14-15.  Plaintiffs argue further that Petrofsky acted outside the line and scope of his duties because he used his familial relationships to carry out his theft.  *Id.*   Consequently, since Petrofsky's theft was not on behalf of PAS, Plaintiffs contend that he does not qualify as a "you" under the policy.

Basically, to obtain coverage for Petrofsky's theft, Plaintiffs want the court to consider only Petrofsky's illegal conduct and to ignore the other valid professional services he engaged in concurrently or at some other point during his employment.  Essentially, Plaintiffs seek to separate legal activities from illegal conduct, so that while an employee is engaging in legal conduct, he is rendering "professional services" and qualifies as a "you" under the policy, but loses that designation totally when he strays into illegal conduct.  Although the court is sympathetic to Plaintiffs since they are also victims of Petrofsky's conduct, the court can only reach this conclusion if it engages in a "strained or twisted reading in interpreting the [policy] language" and refuses to "construe the words [of the policy] according to the interpretation ordinary men would place on the language used therein." *Caribbean I*, 600 F. Supp. 2d at 1244 (citations and quotations omitted).  When the policy here is read as a whole,[2] and its words are construed

---

[2] *See, e.g.*, *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1154 (Ala. 2003) ("All portions of a policy should be considered in construing it", and the court "must read each phrase in the context of all other provisions.") (quotations and citations omitted); *Allstate Ins. v. Hardnett*, 763

with their usual and ordinary meaning, it is clear that an employee does not cease rendering "professional services" merely because some of his conduct is fraudulent.

As an initial matter, the court notes that Plaintiffs' assertion that fraudulent or criminal conduct of its employees can never constitute "professional services" would render essentially useless the professional liability policy here that covers individuals for claims from errors or wrongful acts or omissions they commit in the rendering of professional services. *See* doc. 19-3 at 31. Indeed, if Petrofsky's conduct had commenced <u>after</u> the policy inception date, Plaintiffs would be due coverage, even though, as they contend, Petrofsky stole "blank checks from a family member's home and then us[ed] them for . . . [his] own benefit," and was not acting within the line and scope of his duties when he stole the funds. Doc. 21 at 14-15. In other words, Petrofsky's conduct is precisely the sort this professional liability policy would have covered, but for the prior knowledge clause.

Moreover, that Petrofsky's theft fell outside of his role as a client advisor, a fact no one disputes, does not mean that he was not also rendering "professional services" for PAS when he stole the funds. To carve out illegal acts from regular

---

So. 2d 963, 965 (Ala. 2000) ("An insurance policy must be read as a whole . . . each provision must be read in context with all other provisions").

duties – as Plaintiffs want – and to say that only legal acts fit the definitions of the policy is a limitation that defeats the very purpose of the policy.  As Defendant points out, if Plaintiffs are correct that Petrofsky's actions fall outside the "professional services" definition simply because stealing money is against the interests of the affected clients and Plaintiffs, then no coverage would exist because, to have a valid "claim" under the policy, the conduct must arise "in the rendering of professional services."  Doc. 19-3 at 31.  In other words, Plaintiffs cannot seek to avoid the plain definition of "you" by asserting that Petrofsky was not rendering "professional services" for PAS, while simultaneously contending that his conduct rises to a "claim." After all, by definition, a "claim" exists only if Petrofsky was, in fact, "rendering . . . professional services."  Doc. 19-3 at 31.  Again, the court must read the policy as a whole to ascertain its full meaning.  *See Allstate Ins.*, 763 So. 2d at 965.  Under the plain and ordinary meaning of the terms of the policy, that Petrofsky engaged in criminal conduct simply does not nullify the fact that he also rendered "professional services" for PAS and, therefore, is a "you."

     Plaintiffs argue further that Petrofsky was not conducting "professional services" because he used "his familial relationship with the victims of his crime, not his employment with PAS," to steal.  Doc. 21 at 15.  To support this

contention, Plaintiffs point to the fact that neither PAS nor its employees had custody or possession of its clients' funds, and that Petrofsky accessed his grandparents' checks during social visits to their home. *Id.* However, Plaintiffs ignore two key facts. First, Petrofsky used the same "familial relationship" to benefit Plaintiffs, through service and investment fees, by convincing his grandparents to transfer their investment accounts to PAS. Second, Petrofsky's employment with PAS made his theft possible by granting him access to and knowledge of the balance of his grandparents' investment accounts, and access to the computer systems to alter the balance on his grandparents' account statements and escape detection. In the final analysis, Petrofsky's decision to select clients that he had easy access to because of familial relationships does not negate the simple fact that he could not have carried out or concealed his theft but for his rendering of "professional services" on PAS's behalf, including for the Schultzes and Schindler, and the access it provided to their funds.

Under the plain terms of the policy, the question is whether Petrofsky conducted "professional services" on PAS's behalf, rather than whether a particular activity was within the scope of his employment. While his actual theft clearly did not "inure to the benefit" of PAS, (doc. 19-3 at 33), and in fact, unfortunately, will cost PAS and Berk money for litigation and to reimburse

Schwab and/or the Schultzes, that does not alter the basic fact that, as an employee, he performed "professional services" on PAS's behalf.[3] Significantly, nothing in the policy supports Plaintiffs' contention that an employee ceases to render "professional services" when he engages in theft or unauthorized conduct. In fact, as stated previously, if this was the case, then Petrofsky's conduct would not qualify as a "claim." Accordingly, "constru[ing] the words [of the policy] according to the interpretation ordinary men would place on the language," (*Caribbean I*, 600 F. Supp. 2d at 1244), the court finds that Petrofsky qualifies as a "you" under the policy.

> 2. *Petrofsky knew or should have known at the policy's effective date his actions might result in a claim on the policy.*

Finding that Petrofsky rendered "professional services" on PAS's behalf does not resolve the coverage issue. The court must also address the "prior knowledge" question. The policy provides coverage for claims made "by reason

---

[3] Plaintiffs contend that Petrofsky is not a "you" because of Defendant's "own limitation placed on its definition of the word . . . which limits the scope of 'you' to an insured's employees, but only for professional services performed on behalf of such insured entity." Doc. 18 and 21 (emphasis and alterations supplied by Plaintiffs). They assert further that this limitation means that the policy does not cover criminal or fraudulent acts employees engage in that are outside the scope of their employment. *Id.* at 21-22. The "but only" language Plaintiffs cite to here does not mean that only legal or authorized conduct falls within the "professional services" definition or that all conduct that is not for PAS's benefit is excluded from the definition. A review of the policy exclusions shows clearly that the language here was designed to exclude unauthorized "professional services" employees perform for other entities unrelated to PAS. *See* Doc. 19-3 at 36.

of an act or omission in the performance of professional services" <u>provided that</u> "prior to the effective date of this Policy, <u>none</u> of you had a basis to believe that any such act or omission, or interrelated act or omission, might reasonably be expected to be the basis of a claim." Doc. 19-3 at 34 (emphasis added). In other words, coverage exists only if this necessary precondition is met, and is denied if <u>anyone</u> meeting the definition of "you" has knowledge of what reasonably might be a potential claim.

Defendant contends that Plaintiffs' claim is not covered because Petrofsky knew on April 1, 2008 (the effective date of the policy) that his fraudulent acts might result in a claim against PAS. Doc. 17 at 20. Plaintiffs disagree and assert that because Petrofsky's theft arose out of his familial relationships, a trier of fact could find that Petrofsky may have reasonably expected that his grandparents would not discover his theft or file a claim against PAS.[4] Doc. 21 at 10-12.

The court disagrees with Plaintiffs' reading of the policy language. The question is not whether Petrofsky reasonably could <u>not</u> have believed that his actions would result in a claim against PAS. The court has no doubt that Petrofsky

---

[4] Plaintiffs contend also that Petrofsky's knowledge cannot and should not be attributed to them to deny coverage. *See* doc. 21 at 9. However, the policy's plain language belies this contention. Specifically, the policy states plainly that coverage is precluded if any "you," including employees, has knowledge of a potential claim. Doc. 19-3 at 34.

engaged in all sorts of mental machinations to justify his theft and plan how to escape detection.  Rather, the question is whether, objectively, Petrofsky should reasonably have expected that his actions might form the basis of a claim.  *See Selko v. Home Ins. Co.*, 139 F.3d 146, 151-152 (3rd Cir. 1998) (finding similar "basis to believe" language required an objective inquiry as to whether a reasonable attorney, with knowledge of his prior acts, would have expected a claim).

    The facts here lead to such a conclusion.  Specifically, Petrofsky utilized various ploys to conceal his theft from his grandparents and PAS.  Among other things, he used PAS's access to Schwab's computer network to gain access to his grandparents' accounts to conceal his conduct.  These actions refute Plaintiffs' contention that a trier of fact may find that the Schultzes "knew about the so-called theft or that they at least 'turned a blind eye' toward Petrofsky's actions for many years prior to the claim being filed" or that Petrofsky could not have expected that his grandparents would discover his theft or file a claim against PAS.  Doc. 21 at 11-12.  To the contrary, Petrofsky's efforts to conceal his conduct show that he

was, in fact, worried about detection and the resulting claim and that his grandparents did not know about his theft or turned a blind eye to it.[5]

When all the facts are viewed objectively, a reasonable investment advisor would have expected that his actions might result in a claim against his employer because, after all, misappropriation of client funds is against the law and typically leads to lawsuits against the deeper pocket employer to recover the stolen funds.[6] *See, e.g.*, *Westport Ins. Corp. v. Gionfriddo*, 524 F. Supp. 2d 167, 175 (D. Conn. 2007) (considering that defendant admitted to converting and misappropriating client funds prior to his application for insurance coverage, he "had to be aware of his acts, errors, and omissions that could be expected to be the basis of a claim"); *Westport Ins. Co. v. Law Offices of Gerald J. Lindor, P.A.*, 2009 WL 722254, at *3 (S.D. Fla. Mar. 18, 2009) (the "history of [attorney's] misappropriation of client funds, coupled with his knowledge [that he misused money entrusted to him

---

[5] Plaintiffs' contention that the Schultzes turned a blind eye and had knowledge of Petrofsky's theft is rank speculation with no evidentiary support. As such, it is insufficient to create an issue of fact to defeat summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion.") (citations and quotations omitted).

[6] Plaintiffs contend that Petrofsky did not steal funds from his mother-in-law's account prior to the policy's effective date. Doc. 21 at 10. However, the precise date Petrofsky stole funds from his mother-in-law is not relevant to the court's resolution of this claim, which arises from Petrofsky's pattern of theft from PAS clients, including the Schultzes, and which began prior to the policy's effective date. In other words, prior to the policy date, Petrofsky knew that his actions might result in a claim on the policy.

by clients] forms the basis of the very type of wrongful act that [defendant] 'knew or could have reasonably foreseen . . . might be expected to be the basis of a claim.'" (quoting insurance policy)). Accordingly, the court finds that Petrofsky's prior knowledge of his wrongful acts and the potential claim that could result from such conduct precludes coverage under the plain language of the policy.

### B. The "innocent insured" provision is inapplicable because Defendant's denial of coverage is not based upon dishonesty.

Finally, Plaintiffs argue that even if Petrofsky is a "you," they are still due coverage because of the "innocent insured" clause, which provides that, if coverage is excluded "as a result of any criminal, dishonest, illegal, fraudulent or malicious acts by any of **you**,[7] we agree that the insurance coverage that would <u>otherwise be afforded</u> under this Policy will continue to apply . . . ." Doc. 19-3 at 40 (emphasis added). Unfortunately for Plaintiffs, Defendant's denial of coverage is not based on the "criminal, dishonest, illegal, fraudulent or malicious" nature of Petrofsky's actions. Rather, Defendant contends that no coverage exists because of Petrofsky's prior knowledge of a claim. Doc. 17 at 20.

---

[7] Although it is an alternate fallback argument, Plaintiffs' reliance on the "innocent insured" clause runs afoul of their contention that Petrofsky is not a "you." As the language here shows unequivocally, the "innocent insured" provision kicks in only if coverage is excluded because of the illegal, criminal, or fraudulent acts of a "<u>you</u>." The definition of "you" is the same throughout the policy and does not change from one section to the next or to suit the needs of a party. When the policy is read as a whole, rather than in isolation, (*see Allstate*, 763 So. 2d at 965), it is clear that Petrofsky is a "you."

As discussed previously, the policy here states that Defendant will provide coverage "<u>provided that</u>" none of "you," as defined by the policy, had "prior knowledge" of any act or omission that "might reasonably be expected" to result in a claim. *Id.* at 34 (emphasis added). In other words, no coverage exists if any "you" had prior knowledge of the existence of a claim. Where there is no prior knowledge and coverage exists, the policy provides various exclusions, including one for dishonesty. *Id.* at 36. However, in cases where the exclusion is because of "criminal, dishonest, illegal, fraudulent or malicious" acts of a "you," then the "innocent insured" provision kicks in to restore coverage. *Id.* at 40.

As the court found in section A.*2*, *supra*, Petrofsky knew or should have known prior to the policy's effective date that his actions might reasonably result in a claim against PAS. Therefore, no coverage exists because he had "prior knowledge" of a claim. Consequently, the "innocent insured" provision, which only applies to instances where coverage that would "otherwise be afforded," is excluded because of dishonesty, fraud, or other criminal activity, (doc. 19-3 at 40), does not offer any relief to Plaintiffs. *See State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 466 (Ala. 1993) (policy exclusion barring coverage for intentional acts of "an" insured precludes coverage for innocent insured); *see also XL Specialty Ins. Co. v. Agoglia*, 2009 WL 1227484, at *13 (S.D.N.Y. April 30, 2009)

("any insured" language of the insurance policy's prior knowledge provision precluded coverage for innocent insureds, despite severability provision protecting innocent insureds because "the words 'any insured' unambiguously preclude coverage for innocent co-insureds"); *Westport Ins. Co. V. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 460-61 (M.D. Pa. 2007) ("any insured" prior knowledge provision precluded coverage for innocent insureds).[8]

## V.  CONCLUSION

No coverage exists here because Petrofsky, a "you," as defined by the policy, had knowledge of a claim prior to the policy's effective date.  Accordingly, the court GRANTS Defendant's motion for summary judgment, DENIES Plaintiffs' motion for partial summary judgment, and DISMISSES this case.

---

[8] Plaintiffs' reliance on *In re Healthsouth Corp. Ins. Litigation*, 308 F. Supp. 2d 1253 (N.D. Ala. 2004), to support their argument that the innocent insured provision applies here, is misplaced. Unlike this case, the insurance company sought to rescind its entire policy as to all insureds because Healthsouth used materially false and misleading financial information to procure insurance coverage, contending that the policies were void from the outset. *Id.* at 1257.  The court disagreed and held that the "severability clauses preclude rescission of the policy as to all insureds regardless of their involvement in the alleged fraud." *Id.* at 1259.  Here, Defendant does not seek to rescind the policy as to all potential claims from all insureds, *i.e.*, it is not arguing that Petrofsky's prior knowledge precludes coverage for all possible claims on the policy.  Defendant only argues that Petrofsky's prior knowledge precludes coverage for this particular claim and that because his prior knowledge, rather than his dishonesty, precludes coverage, the innocent insured provision is inapplicable.

DONE and ordered this 27th day of August, 2010.

                                             **ABDUL K. KALLON**
                                       UNITED STATES DISTRICT JUDGE